UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-22052

DEMETRIUS HAWKINS,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

    Plaintiff, DEMETRIUS HAWKINS ("MR. HAWKINS"), through undersigned counsel, sues Defendant, ROYAL CARIBBEAN CRUISES, LTD. ("ROYAL CARIBBEAN"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

    1.    MR. HAWKINS seeks damages in excess of $75,000.00, exclusive of interest, costs and attorneys' fees.

    2.    This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C.§ 1333.

    3.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

    4.    Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by ROYAL CARIBBEAN.

    5.    MR. HAWKINS is *sui juris* and is a resident and citizen of the state of North Carolina.

6.     ROYAL CARIBBEAN is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

7.     ROYAL CARIBBEAN is a dual citizen of the State of Florida and the nation of Liberia.

8.     ROYAL CARIBBEAN, at all times material hereto, personally or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

     a.     Operated, conducted, engaged in or carried on a business venture; and/or

     b.     Had an office or agency; and/or

     c.     Engaged in substantial activity; and/or

     d.     Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9.     All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10.     Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the deck and/or flooring, and all material and effects pertaining thereto, including the risers, treads, and/or other parts thereof, the surfaces thereof, places where mechanisms should have been, places for and/or relating to drying off, drains that were or should have been in the area to reduce the amount of liquid, any sources of liquid in the subject area and/or the sources of the liquid involved in MR. HAWKINS' incident, including the lighting in the area, the design, and/or visual condition, and/or any other material pertaining to the flooring, the deck, the puddle, the drainage, the windows, and/or the doors.

11.   At all times material hereto, ROYAL CARIBBEAN owned, operated, maintained, managed, and/or controlled the cruise ship, the *Symphony of the Seas*.

12.   At all times material hereto, ROYAL CARIBBEAN owned, operated, maintained, managed, and/or controlled the subject area and the vicinity involved in MR. HAWKINS' incident.

13.   MR. HAWKINS' incident occurred on or about May 26, 2022, while he was a fare paying passenger on ROYAL CARIBBEAN'S vessel, the *Symphony of the Seas* staying in Stateroom 9146.

14.   On or about May 26, 2022, MR. HAWKINS exited the Windjammer Marketplace on Deck 16 through the glass doors after having breakfast with his wife where he then slipped and fell on a puddle contaminated with a foreign liquid substance and/or water as soon as he walked through the doors onto the deck, observing two (2) crew members washing windows with buckets of a liquid substance placed next to the puddle.

15.   As a result, MR. HAWKINS slipped, fell, and suffered severe injuries to his knee and back requiring surgr(ies), scarring, disfigurement, and chronic pain.

16.   At all relevant times, the dangerous and/or risk creating conditions included, but are not limited to, the following:

a.   Neglected flooring with a puddle contaminated with a foreign liquid substance; and/or

b.   The flooring MR. HAWKINS slipped on was unreasonably slippery; and/or

c.   The area MR. HAKWINS slipped on was poorly maintained such that the flooring was unreasonably slippery; and/or

d.   The flooring MR. HAWKINS slipped on was uneven and/or not uniform in dimensions, which unreasonably hindered MR. HAWKINS' body's ability to adjust to the slipperiness of the subject floor; and/or

e.  ROYAL CARIBBEAN provided no reasonable ability for passengers to dry off after leaving the pool and/or before entering the subject restaurant; and/or

f.  The crew members washing the windows spilled cleaning liquid and/or water out of the buckets onto the floor; and/or

g.  MR. HAWKINS observed at least two (2) crew members cleaning the area;

h.  The fact that ROYAL CARIBBEAN did not have crew members and/or reasonably trained crew members adequately supervising the subject area at the time; and/or

i.  The unreasonably dangerous amount of condensation in the subject area; and/or

j.  The unreasonably poorly maintained subject area; and/or

k.  Inadequate warnings in the subject area and/or failure to block the area; and/or

l.  ROYAL CARIBBEAN did not reasonably train crew members to adequately tend to the area prone to puddles and/or condensation; and/or

m.  Other dangerous conditions that will be revealed through discovery.

17.   Each of these dangerous conditions alone was sufficient to cause MR. HAWKINS' incident and injuries, and he is alleging that ROYAL CARIBBEAN was negligent as to each of these conditions separately and not cumulatively.

18.   ROYAL CARIBBEAN either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a.  MR. HAWKINS previously observed ROYAL CARIBBEAN'S crew members tending to the subject area in the busy location, with crew members washing windows in the area with cleaning products and buckets of liquid. *See Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) ("In some cases the

proprietor may be held to have constructive knowledge if . . . an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen . . . the hazard.") (citing *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (1980).

b. At least two (2) crew members washed windows next to the area located near the puddle immediately prior to and/or during the incident, but MR. HAWKINS could not see this puddle until after his incident because, although it was in the vicinity of MR. HAWKINS' fall, the hazard was not within his eyesight and/or field of vision – unlike the crew members who observed and tended to the area before, during, and after the incident. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020) ("Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition.").

c. **<u>After</u>** the incident, this water and/or this material and/or liquid substance appeared present on the surface for at least fifteen (15) minutes prior to MR. HAWKINS' incident because MR. HAWKINS fell in a part of the ship with the ability to observe the general area of his fall for at least fifteen (15) minutes prior to his fall, and he did not see anyone spill and/or treat the subject area with any material during that period of time. However, a reasonable person would not have been able to prevent slipping and falling in this puddle while leaving the doors onto the deck. *See Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 921 (11th Cir. 2020) (finding evidence that a dangerous condition existed for at least ten-minutes was sufficient to prove constructive notice).

d. Furthermore, the dangers were and/or should have been known prior to MR.

HAWKINS' incident because MR. HAWKINS and his wife observed two (2) crew members cleaning windows with buckets of liquid near the area where MR. HAWKINS fell as well as other crew members in the deck location, such that ROYAL CARIBBEAN should have been aware of these conditions. *See Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) ("In some cases the proprietor may be held to have constructive knowledge if . . . an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen . . . the hazard.") (citing *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (1980).

e.  ROYAL CARIBBEAN failed to remedy the danger of unreasonably slippery flooring to mitigate situations involving liquid puddles to avoid passengers from slipping and falling on the deck. In fact, many passengers previously slipped and fell on such decks.

f.  Further, ROYAL CARIBBEAN failed to inspect and/or remedy the hazardous conditions that caused MR. HAWKINS to fall despite the ability to do so (e.g., cleaning the puddle timely, choosing slip-resistant flooring, ensuring an even design, visual cues, blocking off the area, floor-mats, etc.) *See Francis v. MSC Cruises, S.A.*, 835 F. App'x 512, 517–18 (11th Cir. 2020) (pleading that, "[c]hoosing and/or approving" a material and "failing to inspect" it to discover it was unreasonably dangerous to make it safer sufficiently alleged negligent design or maintenance to meet notice  pleading requirements under the Federal Rules of Civil Procedure) (*citing Palm Beach Golf Center-Boca, Inc., v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

g.  ROYAL CARIBBEAN also knew or should have known of these dangerous conditions through inspecting the subject area and the vicinity involved in MR. HAWKINS' incident, and if ROYAL CARIBBEAN did not know of these dangerous conditions, this was because it failed to adequately inspect the subject area and the vicinity involved in MR. HAWKINS' incident. *See Id.*

h.  After MR. HAWKINS fell, it became apparent to him that the water and/or liquid substance on the subject floor must have been there for a lengthy period of time because the significant amount of pooled/accumulated water present did not suddenly appear in a short amount of time to dry, and the other areas of the deck did not show such amounts liquid.

i.  Additional individuals suffered prior incidents, injured both due to the same and/or substantially similar slippery surfaces on ROYAL CARIBBEAN'S ships, including, but not limited to, slip and fall incidents on puddles of a liquid substance. *See Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 537 (11th Cir. 2018) (passenger slipped and fell aboard another one of ROYAL CARIBBEAN'S ships in a puddle); *see also Marshall v. Royal Caribbean Cruises, LTD.*, Case 1:16-cv-21140-KMM (slip and fall on similar external stairs); *see also Whitecotton v. Royal Caribbean Cruises, LTD.*, Case 1:22-cv-20945-RNS (slip and fall on similar external stairs).

j.  Moreover, ROYAL CARIBBEAN knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery. *Id.*

k.  Upon information and belief, ROYAL CARIBBEAN participated in the installation and/or design of the subject flooring and/or doors and/or windows, or alternatively, ROYAL CARIBBEAN accepted the deck area with this design defect present after

having been given an opportunity to inspect the ship and materials on it, including the subject floor, such that ROYAL CARIBBEAN should have known of the design defects of the subject flooring before providing it for public use. These design defects include, but are not limited to, the structural dangers and/or hazardous designs. *See Francis v. MSC Cruises, S.A.*, 835 F. App'x 512, 517–18 (11th Cir. 2020) (pleading that, "[c]hoosing and/or approving" a material and "failing to inspect" it to discover it was unreasonably dangerous to make it safer sufficiently alleged negligent design or maintenance to meet notice pleading requirements under the Federal Rules of Civil Procedure) (*citing Palm Beach Golf Center-Boca, Inc., v. John G. Sarris*, 781 F.3d 1245, 1260 (11th Cir. 2015) (noting that a complaint "need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

l.   Upon information and belief, there are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed herein, ROYAL CARIBBEAN should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for ROYAL CARIBBEAN to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable Defendant should have done. *See Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1356 (S.D. Fla. 2015) ("As previously noted, 'the law in the Eleventh Circuit . . . is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence.' *Cook*, 2012 WL 1792628,

at \*3 (*citing Muncie Aviation Corp.*, 519 F.2d 1178; Frazier, 568 F.2d 378); *see also Giorgio*, 2006 WL 1042003, at \*2. **Such guidelines are also probative of the defendant's constructive knowledge of the allegedly hazardous condition.**'") (emphasis added) (*citing Cook*, 2012 WL 1792628, at \*3; *Donlon*, 2011 WL 6020574, at \*6)).

m. Moreover, ROYAL CARIBBEAN knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

19.   At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, outdated, improperly designed, improperly installed, and/or otherwise unsafe.

20.   The subject area and the vicinity lacked adequate safety features and/or safeguards to prevent MR. HAWKINS' fall.

21.   These hazardous conditions were known, or should have been known, to ROYAL CARIBBEAN in the exercise of reasonable care.

22.   These hazardous conditions existed for a period of time before the incident.

23.   These conditions were neither open nor obvious to MR. HAWKINS.

24.   At all times relevant, ROYAL CARIBBEAN failed to adequately inspect the subject area and the vicinity for dangers and failed to adequately warn MR. HAWKINS of the dangers.

25.   At all times relevant, ROYAL CARIBBEAN failed to eliminate the hazards.

26.   At all times relevant, ROYAL CARIBBEAN failed to maintain the subject area and the vicinity in a reasonably safe condition.

27.   At all times relevant, ROYAL CARIBBEAN participated in the design and/or approved the design of the subject area and the vicinity involved in MR. HAWKINS' incident.

28.   At all times relevant, ROYAL CARIBBEAN participated in the installation and/or approved the installation of the subject area and the vicinity involved in MR. HAWKINS' incident.

29.   The crew members of the *Symphony of the Seas* were in regular full-time employment of ROYAL CARIBBEAN and/or the ship, as salaried crew members, subject to the ship's discipline and master's orders.

30.   ROYAL CARIBBEAN had the right to hire and fire their employees and/or agents.

31.   ROYAL CARIBBEAN is directly responsible and liable for their actions and the actions of its employees and/or agents.

32.   The crew members, including the medical staff, were employees and/or actual agents and/or apparent agents of ROYAL CARIBBEAN, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

33.   The crew members represented themselves as employees of ROYAL CARIBBEAN to MR. HAWKINS and the ship's passengers through signs, documents, and/or uniforms. ROYAL CARIBBEAN paid these crew members salary and/or an hourly wage. ROYAL CARIBBEAN knew that the crew members represented themselves as employees of ROYAL CARIBBEAN and allowed them to represent themselves as such. MR. HAWKINS detrimentally relied on these representations as he would not have proceeded on the subject cruise had he believed the crew members were not employees of ROYAL CARIBBEAN.

**COUNT I**
**NEGLIGENT FAILURE TO INSPECT**

34.   MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33 as if set forth herein.

35.   ROYAL CARIBBEAN owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

36.     This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

37.     At all times material, ROYAL CARIBBEAN, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL CARIBBEAN breached the duty of reasonable care owed to MR. HAWKINS and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the risk creating and/or dangerous conditions discussed in paragraph 18 of the instant Complaint were present at the time of MR. HAWKINS' incident.

38.     ROYAL CARIBBEAN either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the instant Complaint.

39.     These risk-creating and/or dangerous conditions were caused by ROYAL CARIBBEAN'S failure to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

40.     Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

41.     ROYAL CARIBBEAN'S negligence proximately caused MR. HAWKINS' great bodily harm in that, but for ROYAL CARIBBEAN'S negligence, his injuries would not have occurred.

42.   As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, loss of future earning capacity, loss of the value of his vacation, cruise, and transportation costs.

43.   The losses are permanent and/or continuing in nature.

44.   MR. HAWKINS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of his vacation, cruise, and transportation costs, loss of important bodily functions, lost wages in the past and future, loss of earning capacity in the past and in the future, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT II
## <u>NEGLIGENT FAILURE TO MAINTAIN</u>

45.   MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

46.   ROYAL CARIBBEAN owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

47.   This duty includes, but is not limited to, the duty to provide its passengers reasonable

care by adequately maintaining the subject area and the vicinity.

48. At all times material, ROYAL CARIBBEAN, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL CARIBBEAN, breached the duty of reasonable care owed to MR. HAWKINS and were negligent by failing to adequately maintain the subject area and the vicinity discussed in paragraph 18 of the instant Complaint that were present at the time of MR. HAWKINS' incident.

49. ROYAL CARIBBEAN either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the instant Complaint.

50. Moreover, these risk-creating and/or dangerous conditions were caused by ROYAL CARIBBEAN'S failure to adequately maintain the subject area and the vicinity.

51. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

52. ROYAL CARIBBEAN'S negligence proximately caused MR. HAWKINS' great bodily harm in that, but for ROYAL CARIBBEAN'S negligence, his injuries would not have occurred.

53. As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, loss of the value of his vacation,

cruise, and transportation costs.

54.   The losses are permanent and/or continuing in nature.

55.   MR. HAWKINS has suffered these losses in the past and will continue to suffer such losses in the future.

56.   **WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands Judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of his vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT III
### NEGLIGENT FAILURE TO REMEDY

57.   MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33 as if set forth herein.

58.   ROYAL CARIBBEAN owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

59.   This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

60.   At all times material, ROYAL CARIBBEAN, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL CARIBBEAN, breached the duty of reasonable care

owed to MR. HAWKINS and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 18 of the instant Complaint were present at the time of MR. HAWKINS' incident.

61.   ROYAL CARIBBEAN either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the instant Complaint.

62.   Moreover, these risk-creating and/or dangerous conditions were caused ROYAL CARIBBEAN'S failure to adequately remedy the subject area.

63.   Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

64.   ROYAL CARIBBEAN'S negligence proximately caused MR. HAWKINS' great bodily harm in that, but for ROYAL CARIBBEAN'S negligence, his injuries would not have occurred.

65.   As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, loss of future earning capacity, loss of the value of his vacation, cruise, and transportation costs.

66.   The losses are permanent and/or continuing in nature.

67.   MR. HAWKINS has suffered these losses in the past and will continue to suffer such losses in the future.

68.   **WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands Judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value of his vacation, cruise, lost transportation costs, loss of important bodily functions, loss of independence, loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF A DANGEROUS CONDITION

69.   MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33 as if set forth herein.

70.   At all times relevant, ROYAL CARIBBEAN owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including MR. HAWKINS.

71.   Such duty includes, but is not limited to, the duty that ROYAL CARIBBEAN owes to warn passengers of any dangers that it knew or should have known that were not open and obvious to MR. HAWKINS.

72.   Such duty also includes, but is not limited to, the duty to warn passengers of hazards which passengers may reasonably be expected to encounter.

73.   At all times material, ROYAL CARIBBEAN, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL CARIBBEAN, breached the duty of reasonable care owed to MR. HAWKINS and was negligent by failing to warn him of the dangerous conditions

discussed in paragraph 18 of the instant Complaint.

74.  Furthermore, ROYAL CARIBBEAN knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18 of the instant Complaint.

75.  These dangerous conditions were also created by ROYAL CARIBBEAN.

76.  ROYAL CARIBBEAN failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or ROYAL CARIBBEAN failed to warn MR. HAWKINS despite knowing the dangers.

77.  These dangerous conditions existed for a period of time before the incident.

78.  These conditions were neither open nor obvious to MR. HAWKINS.

79.  ROYAL CARIBBEAN'S breach was the cause in-fact of MR. HAWKINS' great bodily harm in that, but for ROYAL CARIBBEAN'S breach, MR. HAWKINS' injuries would not have occurred.

80.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

81.  ROYAL CARIBBEAN'S breach proximately caused MR. HAWKINS' great bodily harm in that the incident that occurred was a foreseeable result of ROYAL CARIBBEAN'S breach.

82.  As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, loss of future earning capacity, and loss of the value of his vacation,

cruise, and transportation costs.

83.    The losses are permanent and/or continuing in nature.

84.    MR. HAWKINS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of his vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT**
**AREA AND THE VICINITY**

85.    MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

86.    At all times material hereto, ROYAL CARIBBEAN owed a duty to its passengers, and in particular a duty to MR. HAWKINS, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 18 of the instant Complaint, as well as to design and install reasonable safeguards.

87.    At all times material hereto, ROYAL CARIBBEAN participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on which MR. HAWKINS was injured into the channels of trade, and/or ROYAL

CARIBBEAN approved of the subject vessel's design, including the design of the subject area and the vicinity.

88.     At all times material hereto, ROYAL CARIBBEAN manufactured, designed, installed, and/or approved of the *Symphony of the Seas*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to MR. HAWKINS, to design, install and/or approve of the subject area and the vicinity without any defects.

89.     At all times material hereto, ROYAL CARIBBEAN through its agents and/or employees who were acting in the course and scope of their employment and/or agency with ROYAL CARIBBEAN, designed, installed, and/or approved of the subject area and the vicinity involved in MR. HAWKINS' incident, which was also in violation of the applicable industry standards/recommendations/and/or other guidelines.

90.     ROYAL CARIBBEAN provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

91.     ROYAL CARIBBEAN maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Symphony of the Seas*, during the new build process.

92.     ROYAL CARIBBEAN has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

93.     ROYAL CARIBBEAN has the right to inspect and reject design elements before taking possession of the ship.

94.     However, ROYAL CARIBBEAN permitted the dangerous conditions to be present

in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

95.   The design flaws that made the subject area and the vicinity involved in MR. HAWKINS' incident unreasonably dangerous were the direct and proximate cause of his injuries.

96.   ROYAL CARIBBEAN is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in MR. HAWKINS' incident, which it knew or should have known of.

97.   ROYAL CARIBBEAN failed to correct and/or remedy the defective conditions, despite the fact that ROYAL CARIBBEAN knew or should have known of the danger(s).

98.   At all times material hereto, ROYAL CARIBBEAN knew or had reason to know the subject area and the vicinity involved in MR. HAWKINS' incident were unreasonably dangerous for the reasons discussed in paragraph 18 of the instant Complaint.

99.   However, ROYAL CARIBBEAN permitted the dangerous conditions to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

100.  The design flaws that made the subject area and the vicinity involved in MR. HAWKINS' incident unreasonably dangerous were the direct and proximate cause of his injuries.

101.  ROYAL CARIBBEAN is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in MR. HAWKINS' incident, which ROYAL CARIBBEAN knew or should have known of.

102.  ROYAL CARIBBEAN'S breach was the cause-in-fact of MR. HAWKINS' great bodily harm in that, but for ROYAL CARIBBEAN'S breach his injuries would not have occurred.

103.  Furthermore, the subject area and the vicinity were also on a cruise ship in the water

subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

104. ROYAL CARIBBEAN'S breach proximately caused MR. HAWKINS' great bodily harm in that the incident that occurred was a foreseeable result of ROYAL CARIBBEAN'S breach.

105. As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, loss of future earning capacity, and loss of the value of his vacation, cruise, and transportation costs.

106. The losses are permanent and/or continuing in nature.

107. MR. HAWKINS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of his vacation, cruise, transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT VI**
**NEGLIGENCE FOR THE ACTS OF ROYAL CARIBBEAN'S CREW, STAFF,**
**EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY**

108. MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

109. ROYAL CARIBBEAN owed a duty to exercise reasonable care under the circumstances for the safety of its patrons.

110. The crewmembers who negligently failed to warn and/or make safe the subject slippery and wet flooring, as well as the people who were working in and/or who were and/or should have been responsible for inspecting, maintaining, securing, attending to, cleaning, designing, and/or approving the subject area, were agents of ROYAL CARIBBEAN, and specifically including crew members washing windows with buckets of liquid and/or crewmembers who failed to make the slippery flooring safe, for the following reasons:

a. They were the staff and/or employees of ROYAL CARIBBEAN, and/or were ROYAL CARIBBEAN's agents, apparent agents, and/or servants; and/or

b. These staff, employees, and/or agents were subject to the right of control by ROYAL CARIBBEAN; and/or

c. These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d. ROYAL CARIBBEAN acknowledged that these staff, employees, and/or agents would act on ROYAL CARIBBEAN'S behalf, and they accepted the undertaking.

111. ROYAL CARIBBEAN is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in the "Definitions and Factual Allegations" section of the instant Complaint.

112. This breach was the cause-in-fact of MR. HAWKINS' great bodily harm in that, but

for ROYAL CARIBBEAN'S breach his injuries would not have occurred.

113. This negligence proximately caused MR. HAWKINS' great bodily harm in that, but for this negligence, his injuries would not have occurred.

114. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

115. This negligence proximately caused MR. HAWKINS' great bodily harm in that, but for this negligence, his injuries would not have occurred.

116. As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, loss of future earning capacity, and loss of the value of his vacation, cruise, and transportation costs.

117. The losses are permanent and/or continuing in nature.

118. ROYAL CARIBBEAN has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of his vacation, cruise, transportation costs, loss of important bodily

functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VII
## VICARIOUS LIABILITY AGAINST ROYAL CARIBBEAN FOR THE NEGLIGENCE OF THE SHIP'S MEDICAL STAFF

119.  MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

120.  ROYAL CARIBBEAN, through the ship's medical staff (including its physicians and nurses), and the ship's crew, owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

121.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

122.  At all times material, the ship's medical staff (including its physicians and nurses), and the ship's crew, were full-time employees and agents of ROYAL CARIBBEAN, subject to its direction and control, who were engaged in the activity of discharging ROYAL CARIBBEAN'S obligation to make such medical aid and assistance available to its passengers as would an ordinarily prudent person under the circumstances.

123.  ROYAL CARIBBEAN is estopped to deny that the ship's medical staff (including its physicians and nurses), and the ship's crew, were its agents and/or employees and/or servants.

124.  ROYAL CARIBBEAN directly paid the ship's medical personnel and regular crew a salary (i.e., payment by time) for their work in the ship's hospital and in treating passengers.

125.  ROYAL CARIBBEAN created, owned, directly provided, and operated, the medical center to be used by the ship's medical personnel and passengers.

126. ROYAL CARIBBEAN pays to stock the medical center with all supplies, medical

machinery, various medicines, and equipment to be used therein, regularly stocking and restocking same.

127. ROYAL CARIBBEAN collected all medical revenues directly from passengers and generated a profit on the sale of medical services, supplies, and equipment made by the ship's medical personnel to the passengers of the vessel.

128. ROYAL CARIBBEAN'S marketing materials described the infirmary in proprietary language.

129. The ship's medical personnel were members of the ship's crew; they were subject to the ship's discipline; they were required to wear the ship's uniforms; they (and, in particular, the ship's physicians) were members of the ship's officer's compliment, and at all times subject to termination, or other discipline, by ROYAL CARIBBEAN.

130. ROYAL CARIBBEAN provided the ship's medical personnel certain forms of liability insurance and/or indemnification rights.

131. At all times material hereto, ROYAL CARIBBEAN, through the ship's medical staff (including its physicians and nurses), and the ship's crew, was careless, negligent, and breached its duties as follows:

    a. Failing to reasonably medically disembark MR. HAWKINS, including, but not limited to, by failing to give him priority disembarkation status when he reached the port;

    b. Failing to timely call an ambulance and/or to otherwise arrange for MR. HAWKINS to receive timely treatment for his injuries;

    c. Failing to promptly provide MR. HAWKINS with proper medical and/or first aid care and attention;

    d. Failing to timely and properly diagnose and/or assess MR. HAWKINS' condition;

e.  Failing to timely and properly attend to MR. HAWKINS, to his injuries, and to his pain;

f.  Failing to provide reasonable medical and/or first aid care;

g.  Failing to timely and properly treat and care for MR. HAWKINS;

h.  Failing to timely and properly examine MR. HAWKINS' injuries;

i.  Failing to take proper measures to secure proper treatment for MR. HAWKINS, including unreasonably delaying taking measures to secure such proper treatment;

j.  Failing to properly bring and/or arrange for MR. HAWKINS to be brought to an emergency room within a reasonable amount of time; and/or

k.  Failing to give MR. HAWKINS proper discharge instructions.

132.  Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

133.  Under the doctrine of Respondeat Superior, employers are vicariously liable for the negligent acts or omissions by their employees and/or other agents within the course of their employment and/or agency.

134.  ROYAL CARIBBEAN is therefore vicariously liable for all injuries and damages sustained by MR. HAWKINS as a result of the negligence of the ship's medical staff (including its physicians and nurses), and the ship's crew.

135.  At all times material hereto, the aforementioned acts and/or omissions on the part of ROYAL CARIBBEAN'S ship's medical staff (including its physicians and nurses), and the ship's crew, fell below the standard of care.

136.  The negligence of ROYAL CARIBBEAN'S ship's medical staff (including its physicians and nurses), and the ship's crew, proximately caused MR. HAWKINS' great bodily harm in that, but for ROYAL CARIBBEAN'S negligence, MR. HAWKINS' injuries would not

have occurred and/or said injuries would have been substantially lessened.

137. ROYAL CARIBBEAN, through its employees and agents, to wit, the ship's medical staff, knew or should have known that the medical procedures they employed violated and/or did not meet reasonable standards of medical care.

138. As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, loss of future earning capacity, loss of the value of his vacation, cruise, and transportation costs.

139. The losses are permanent and/or continuing in nature.

140. MR. HAWKINS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands Judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, loss of independence, lost wages, and lost earning capacity, loss of the value of his vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VIII
## APPARENT AGENCY
## FOR THE ACTS OF THE SHIP'S MEDICAL STAFF

141.  MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

142.  At all times material hereto, the ship's medical staff represented to MR. HAWKINS and to the ship's passengers as employees and/or agents and/or servants of ROYAL CARIBBEAN, in that:

a.  Medical staff wore a ship's uniform;

b.  Medical staff ate with the ship's crew;

c.  Medical staff was under the commands of the ship's officers;

d.  Medical staff worked in the ship's medical department;

e.  Medical staff was paid a salary by ROYAL CARIBBEAN;

f.  Medical staff worked aboard the vessel; and/or

g.  Medical staff spoke to MR. HAWKINS as though they had authority to do so by ROYAL CARIBBEAN.

143.  In addition, ROYAL CARIBBEAN further represented to MR. HAWKINS that the vessel's medical staff were agents and/or employees of ROYAL CARIBBEAN through its marketing materials and through other official statements that described the infirmary in proprietary language, including language such as "ROYAL CARIBBEAN *Symphony's* Medical Center/our infirmary/our medical center," and through encouraging MR. HAWKINS to make use of "its" infirmary/medical center if he was in need of medical attention.

144.  Furthermore, at no time did ROYAL CARIBBEAN represent to MR. HAWKINS or the ship's passengers in general, in a meaningful way that the vessel's medical staff were not agents

or employees of ROYAL CARIBBEAN.

145. At all material times, MR. HAWKINS reasonably relied on the representations to his detriment that the medical staff were employees, and/or agents, and/or servants of ROYAL CARIBBEAN.

146. It was reasonable to believe that the medical staff were ROYAL CARIBBEAN'S agents because they wore a ship's uniform. In addition, at all times material, the medical staff spoke and acted as though they were authorized to do so by ROYAL CARIBBEAN.

147. This reasonable reliance was detrimental because it delayed MR. HAWKINS from receiving proper medical treatment and/or MR. HAWKINS would not have gone on the subject cruise with ROYAL CARIBBEAN had MR. HAWKINS known that the medical staff on the ship were not ROYAL CARIBBEAN'S agents.

148. ROYAL CARIBBEAN is estopped to deny that the medical staff were its apparent agents, and/or apparent employees, and/or apparent servants.

149. ROYAL CARIBBEAN had a duty to provide MR. HAWKINS with reasonable care under the circumstances and through the acts of its apparent agents breached its duty to provide MR. HAWKINS with reasonable care under the circumstances.

150. MR. HAWKINS' injuries were aggravated due to the fault and/or negligence of ROYAL CARIBBEAN through the acts of its apparent agents as follows:

a. Failing to reasonably medically disembark MR. HAWKINS;

b. Failing to timely call an ambulance and/or to otherwise arrange for MR. HAWKINS to receive timely treatment for his injuries;

c. Failing to promptly provide MR. HAWKINS with proper medical and/or first aid care and attention;

d. Failing to timely and properly diagnose and/or assess MR. HAWKINS' condition;

e. Failing to timely and properly attend to MR. HAWKINS, his injuries, and his pain;

f. Failing to provide reasonable medical and/or first aid care;

g. Failing to timely and properly treat and care for MR. HAWKINS;

h. Failing to timely and properly examine MR. HAWKINS' injuries;

i. Failing to take proper measures to secure proper treatment for MR. HAWKINS, including unreasonably delaying taking measures to secure such proper treatment;

j. Failing to properly bring and/or arrange for MR. HAWKINS to be brought to an emergency room within a reasonable amount of time; and/or

k. Failing to give MR. HAWKINS proper discharge instructions.

151. Pain is a frequently experienced, yet oftentimes overlooked factor in wound care and wound healing. It is undeniable that pain affects wound care practice, and unresolved pain negatively impacts both wound healing and a patient's quality of life.

152. As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, loss of future earning capacity, loss of the value of his vacation, cruise, and transportation costs.

153. The losses are either permanent or continuing in nature.

154. MR. HAWKINS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands Judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of the value his vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT IX**
**ASSUMPTION OF DUTY FOR THE**
**NEGLIGENCE OF THE SHIP'S MEDICAL STAFF**

155.  MR. HAWKINS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

156.  ROYAL CARIBBEAN owed MR. HAWKINS the duty to exercise reasonable care under the circumstances for the safety of its passengers.

157.  Such duties include, but are not limited to, providing such medical care and assistance as would an ordinarily prudent person under the circumstances.

158.  ROYAL CARIBBEAN elected to discharge this duty by having MR. HAWKINS seen by its own ship's physicians and/or other crew members.

159.  As such, ROYAL CARIBBEAN voluntarily assumed a duty for the benefit of MR. HAWKINS to use reasonable care in the provision of medical services to MR. HAWKINS.

160. At all times material hereto, ROYAL CARIBBEAN was careless, negligent, and breached its duties due to the fault and/or negligence of ROYAL CARIBBEAN through the acts of its apparent agents by:

**ARONFELD TRIAL LAWYERS**
Aronfeld.com
**Page 31 of 34**

a. Failing to reasonably medically disembark MR. HAWKINS;

b. Failing to timely call an ambulance and/or to otherwise arrange for MR. HAWKINS to receive timely treatment for his injuries;

c. Failing to promptly provide MR. HAWKINS with proper medical and/or first aid care and attention;

d. Failing to timely and properly diagnose and/or assess MR. HAWKINS' condition;

e. Failing to timely and properly attend to MR. HAWKINS, his injuries, and his pain;

f. Failing to provide reasonable medical and/or first aid care;

g. Failing to timely and properly treat and care for MR. HAWKINS;

h. Failing to timely and properly examine MR. HAWKINS' injuries;

i. Failing to take proper measures to secure proper treatment for MR. HAWKINS, including unreasonably delaying taking measures to secure such proper treatment;

j. Failing to properly bring and/or arrange for MR. HAWKINS to be brought to an emergency room within a reasonable amount of time; and/or

k. Failing to give MR. HAWKINS proper discharge instructions.

161. At all times material hereto, the aforementioned acts and/or omissions on the part of ROYAL CARIBBEAN fell below the standard of care.

162. ROYAL CARIBBEAN'S negligence proximately caused MR. HAWKINS' great bodily harm in that, but for ROYAL CARIBBEAN'S negligence, MR. HAWKINS' injuries would not have occurred, would have been substantially lessened, and/or would not have been aggravated.

163.  ROYAL CARIBBEAN, through its employees and agents, to wit, the ship's medical staff, knew, or should have known, that the medical procedures they employed violated reasonable standards of medical care.

164.  As a result of ROYAL CARIBBEAN'S negligence, MR. HAWKINS has suffered severe bodily injury resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of independence, lost wages, loss of future earning capacity, loss of the value of his vacation, cruise, and transportation costs.

165.  The losses are permanent and/or continuing in nature.

166.  MR. HAWKINS has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, DEMETRIUS HAWKINS, demands Judgment against Defendant, ROYAL CARIBBEAN CRUISES, LTD., for damages suffered and costs incurred, as well as for damages and costs that MR. HAWKINS will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, scarring, disfigurement, mental anguish, hospitalization, medical care and treatment, nursing care, loss of independence, lost wages, lost earning capacity, loss of the value of his vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, DEMETRIUS HAWKINS, demands trial by jury on all issues so triable.

**Dated:** July 6, 2022.

**ARONFELD TRIAL LAWYERS**
Aronfeld.com
**Page 33 of 34**

Respectfully submitted,

*/s/ Spencer M. Aronfeld*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi, Esq.**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Riana S. Maryanoff, Esq.**
Florida Bar No.: 1024768
rmaryanoff@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
***Attorneys for Plaintiff***